# Alabama Great Southern R. R. Co. *v.* Arnold.

*Action against Railroad Company for Personal Injury.*

1. *Duty of railroad company in providing lights at depot or ticket-office.* Although it may not be the duty of a railroad company, in the absence of statutory requirements, to erect and maintain a ticket-office and waiting-room at a station on its road; yet, having erected it, and thereby invited persons having business to enter and use it, the law requires that the office, with the platform and steps leading to it, shall be

[Alabama Great Southern R. R. Co. v. Arnold.]

adapted to the purpose, and not dangerous or unsafe; but the duty of providing lights by night, at such office, is limited to the arrival and departure of trains, with such additional time before and after as may be necessary and proper to avoid undue haste and otherwise secure safety. (Limiting and explaining *M. & E. Railway Co. v. Thompson,* 77 Ala. 448.)

2. *Exemplary damages; not necessary to aver.*—In an action against a railroad company to recover damages for personal injuries, exemplary damages may be recovered, in a proper case, without being specially averred and claimed in the complaint.

3. *Same; when not recoverable.*—Where the injury complained of was caused by the failure of the railroad company to provide proper lights at the station, this being simple negligence only, as contra-distinguished from gross negligence, exemplary damages are not recoverable.

4. *Joining issue on defective plea.*—When issue is joined, without objection, on a defective plea, and the evidence establishes its material averments, the defendant is entitled to a verdict, notwithstanding its defects.

5. *Diligence required of railroad company in business affairs.*—In the administration of its affairs and the conduct of its business with the public, a railroad company may safely conform to the rules and practice generally in use by other prudently conducted companies, except when they violate or disregard some positive requirement of the law.

6. *Contributory negligence.*—The plaintiff having been injured by falling from the platform at the ticket-office, at night, missing the steps by walking obliquely from the office, though he was well acquainted with the premises; *held,* that the question of contributory negligence was properly submitted to the jury; STONE, C. J., holding that it was negligence as matter of law.

APPEAL from the Circuit Court of Greene.

Tried before the Hon. S. H. SPROTT.

This was an action against the appellant, the Alabama Great Southern Railroad Company, for personal injuries received by the appellee, John W. Arnold, in falling at night from the platform of the railroad station of said company at Boligee, which fall, he alleged, was due to the failure on the part of the railroad company to have the station, or depot, supplied with a light.

Arnold had gone to the ticket office, purchased a ticket for transportation on the train then about to arrive, and on leaving the office fell from the platform.

Defendant demurred to the complaint on the ground that it was not the legal duty of the defendant to provide good and safe platform and lights, or either such platform or lights at Boligee station. This demurrer was overruled. Defendant then filed the following pleas:

1st. "That it is not guilty of the matter alleged in said complaint."

2d and 4th pleas set up contributory negligence on the part of plaintiff.

3d. "And for a further plea to said complaint the defend-ant avers that all the injuries of which the plaintiff therein complains was the result of pure accident."

5th. And for a further plea to said complaint the defend-ant avers, that at the time of the alleged injury . . there was no statute or law of force in Alabama imposing upon de-fendant the duty, nor any duty resting upon the defendant as a carrier of passengers, of furnishing any better platform, or light, or lights at said station of Boligee, than was fur-nished at said station at the time of the alleged injury."

6th. "For further plea . . defendant says . . that . . said Boligee station at which said injury occurred is situated upon the said railroad between the capitals of the counties of Greene and Sumter; that the population of the village at and about said station is small, being, to-wit, one hundred persons, and the business transacted at said station is small in proportion; that the village at said station of Bo-ligee is not an incorporated town, and has no municipal or-ganization; that there is in said village but few streets, upon which all the business coming thereto is conducted, and which lead up to said station and said station house, and there are no difficulties therein, but which are free and open to the public; and that said village and station of Boligee is what is commonly called a country station; that the said station of Boligee is not, nor was, lit by gas, electricity or lamps or lights of any other kind upon the streets thereof; and that the only lights used in the said station and village are used in the dwellings and other houses thereof, and are oil lamps and candles; that, at the time of the alleged injury, said station house had lamps burning therein, and were either portable or stationary as the occasion demanded; that the said station house was amply large for the business transacted at said point, and constructed with as much care as is usual or re-quired by law or statutes of the State of such station, or custom and usage upon well regulated railroads required; and that on account of the smallness of the village at such station in population and business, the defendant was not, by custom or law, required to have the same lighted by both indoors and outdoors lights, provided they had indoor lights which were convenient to the small traveling public and ready to be used, and subjected to their call at any time; and defend-ant avers that the said plaintiff and the public generally were well acquainted with said station house and the ap-proaches thereto, and the habits and customs connected

11

therewith for the regulation and use of said station, and for the use of the lights at and about the same; and the defendant avers that this being its full duty in the premises, they provided such lights as were required by them at said station; and neither did the plaintiff, nor any one for him, demand any further or additional lights, nor ask to be lighted to or from the stopping place of said trains on said night; and defendant avers that it has done and performed each and every duty required of it by custom or law, and that the said alleged injury was not caused by any act or omission to act on its part."

Plea No. 3, mentioned in the opinion as the plea to which a demurrer was sustained, at a former term, set up the statute of limitations of one year to an amended count to the complaint. The amended count contained no new cause of action, and for this reason a demurrer was sustained to the plea. See 80 Ala. 600.

The distance from the ticket-office door to the steps fronting the door was three feet, seven inches, this distance being the width of the platform, which was sixteen feet long. The nature of the evidence appears in the opinion.

The court refused each of the following charges requested by defendant:

1. "If the jury believe all the evidence, they must find for the defendant under the first count of the complaint."

2. "If the jury believe all the evidence, they must find for the defendant under the second count of the complaint."

3. "If the jury believe all the evidence, the jury are not authorized to give to the plaintiff exemplary damages."

4. "If the jury believe all the evidence, they are not authorized to find that the injury to the plaintiff was wanton or intentional, or to assess exemplary damages against the defendant."

10. "At the time of the fall of Arnold, for which damages are claimed in this suit, there was no law of this State by which a railroad company was required to light its stations or depot buildings at night, if the depot building was of such a character as was of customary use by well regulated railways at stations of like kind and business."

SAMUEL F. RICE, WOOD & WOOD, and THOS. R. ROULHAC, for appellant.—4. This is an action on the case *in tort*. To support such an action there must exist on the part of the defendant some duty, imposed by law, either by the common

[Alabama Great Southern R. R. Co. v. Arnold.]

law or by statute, from the violation of which injury has resulted to the plaintiff.—*Mobile Life Ins. Co. v. Randall*, 74 Ala. 177–8. For unless there is a duty resting on the defendant there can be no tort. 2. What is then the duty averred to rest upon the defendant in this case, the failure to observe which would constitute a tort? That of providing a sufficient light at its depot at Boligee station on February 11, 1885.—*A. G. S. R. R. v. Arnold*, 80 Ala. 604. Did this duty exist at this time? (a) Was there any such duty resting upon it at the common law? It was not required by the common law to provide even any depot for passengers.—*People v. N. Y., L. E. & W. R. Co.*, 104 N. Y. 63; 106 N. Y. 136. The authorities relied on to support a contrary conclusion will all be found on examination to be based either on a statute, which vindicates that conclusion, or else on decisions which do not support such conclusion. The decision of Chief-Justice Dillon, in *McDonald v. Chicago, &c., R. R. Co.*, 26 Iowa, 139, is based on *Catersham v. London R. R. Co.*, 87 Eng. Com. Law Rep. 410; but the latter decision shows that it was supported by the Act of Parliament, 17 and 18 Vict. Ch. 31. (b) Was there any such duty imposed by statute? Not when this action was begun on July 2, 1885; not when the alleged injury was received on February 11, 1885; and not until the 28th day of February, 1887, more than two years after the accident occurred.—Acts of 1886–87, p. 75, § 1. The state of our statute law as to lights was similar to that of New York as to depots.—Acts of 1880-81, page 91, § 20; acts of 1882-83, page 154. If it was not defendants' duty to have any depot at all, it could not be their duty to light it, *unless as hereafter shown, that, having a depot, it would be more than ordinarily dangerous to leave it unlighted,—thus making it or the approaches thereto something in the nature of a trap or pitfall.* The legislature having by statute imposed that duty, is an evidence that it did not before regard it as existing.—*M. & E. R. R. Co. v. Thompson*, 78 Ala. 459-460. 3. All the decisions, which hold that depots should be lighted without statute requiring, are justified by the fact in the case that the injury resulted from what was a trap or pitfall.—*Hulbert v. N. Y. Central R. R. Co.*, 40 N. Y. 145; *Siner v. Great Western R'y*, 3 Exch. 150; *Reuncker v. S. C. R. R.* 20 S. Car. 103; *Toomey v. London & C. R. R.* 91 Eng. Com. Law 146; 2 Wood's Railway Law, p. 1169; 1 Addison on Torts, 6 Ed. 320-321-3; *Reynolds v. R. R. Co.*, 37 La. Annual 697;

[Alabama Great Southern R. R. Co. v. Arnold.]

*Peniston v. R. R. Co.*, 34 La. Annual 780. 4. What then is a trap or pitfall? ˙ Such a situation, conditions, surroundings or obstacle as is more than *ordinarily dangerous*, or which subjects the party licensed or invited on the premises to unusual or imminent peril. 2 Wood's Railway Law, pp. 1138-1165; 1 Addison on Torts, 6 Ed. 320-321-3; *Siner v. Great Western R. R.* 3 Exch. 150; *Van Schaick v. Hudson River R. R.* 43 N. Y. 523; *Toomey v. London & C. R. R.* 91 Eng. Com. Law Rep. 146; *Laflin v. B. & S. W. R. R. Co.*, 106 N. Y. 136. 5. And if plaintiff seeks to recover upon the last named ground, the complaint must aver it. *A. G. S. R. R. Co. v. Arnold*, 80 Ala. 604; *T. W. & W. R'y Co. v. Foss*, 88 Ill. 551. 6. That is not and cannot be a trap or pitfall, which experience has shown to be used in the same manner without accident, or such as are in use for the same purpose by prudent persons in that business.—*Siner v. Gt. Western R'y Co. supra*; *Laflin v. B. A. & W. R. R. Co. supra*; *McKone v. Mich. Central R. R.* 51 Mich. 604. 7. Contributory negligence.—*R. R. Co. v. Aspen*, 23 Pen. St. 147; *Forsyth v. Boston R. R. Co.* 103 Mass. 510; *Stout v. Sioux City & Pac. R. R. Co.*, 2 Dillon, R. 297. And knowledge of danger is an element in contributory negligence.—*Bunker v. Covington*, 69 Ind. 33; *Indianapolis v. Cook*, 99 Ind. 12,* 13.* 8. Questions of negligence *vel non*, when facts undisputed, is one of law.—*Indianapolis v. Cook*, 99 Ind. 10; *Montgomery v Wright*, 72 Ala. 411; *A. G. S. R. R. v. Arnold*, 80 Ala. 600. ˙˙ It is no interference with the province of the jury to give judgment upon the legal effect" of facts or circumstances, the existence or non-existence of which was left for their determination.

JAS. B. HEAD and J. J. ALTMAN, *contra*, cited *R. R. Co. v. Arnold*, 80 Ala. 600; *R. R. Co. v. McLendon*, 63 Ala. 266; *R. R. Co. v. Thompson*, 77 Ala. 448; 32 Wisconsin 524; 36 Wisconsin 413.

STONE, C. J.—This case was before us at a former term. 80 Ala. 600. The complaint consisted of two counts, one the original, and the other an amendment, adding a second count. The complaint is the same now as on the former appeal. On that appeal we held that the gravamen of each count was the same—the failure to have the depot supplied with a light. The first, or original count predicates negligence on the part of the railroad, on the naked averments

[Alabama Great Southern R. R. Co. v. Arnold.]

that Boligee was one of its stations for receiving and dis-
charging passengers, that at that station the railroad had
erected a platform and thereon its only ticket office at that
place, that plaintiff desiring to take passage on its train,
soon to arrive, had entered the office and procured a ticket,
that it was night time, very dark, and no light furnished,
that the train " was about arriving," and that the " plaintiff
attempted to descend the steps of said platform for the pur-
pose of entering the car, and in attempting so to do, fell and
thereby received severe personal injuries." The count then
avers that " said fall and injuries were caused by the negli-
gence of defendant, or its servants, in failing to provide a
light at said station, whereby plaintiff would have been able
to see his way, and avoid said fall and injuries."

The amendment, or second count, differs from the first,
only in the following additional averments, giving a more
minute description of the place where the injury was suffered:
" That said office had in front of, and attached to it, fronting
its entrance, a platform about three and one-half feet wide,
which was accessible by steps about three and a half feet in
width, reaching from the ground to the top of the platform
in front of the door of said ticket office, over which steps
and platform passengers were required to pass in entering
the ticket office. The surface of said platform was elevated
about four, or four and a half feet above the ground; and
plaintiff avers that the construction of said steps and plat-
form as above described, rendered the same unsafe and dan-
gerous, and liable to cause personal injuries to persons pass-
ing over the same." The count then described the injury
as it was described in the first count, and complains of the
absence of a light, as the negligence which caused the in-
jury. Speaking of these counts, we, on the former appeal,
said: " The injury and the negligence complained of as
the cause, are the same as set forth in both counts; and while
it is averred that the construction of the steps and platform
rendered them unsafe and dangerous, this does not consti-
tute the negligence, alleged to be the cause of the injury;
but, as we interpret the count, the allegations are intended
to show a greater and more imperative duty to provide a
light, from the failure to do which it is distinctly and ex-
pressly averred, in the new count, the injuries resulted.
Under neither count is the plaintiff entitled to recover for
any negligence, other than the failure to provide a light."

When this case was returned to the circuit court, the de-

fendant demurred to the counts of the complaint collectively, and assigned as cause of demurrer, that "there was at the time mentioned in said complaint no statute of force in the State of Alabama which required of, or imposed upon said defendant the duty to furnish good and safe platform and lights, or either of such platform or lights at Boligee station, nor was there any duty at the common law to furnish said platform or lights." There was, when the injury is alleged to have occurred—February 11, 1885—no statute relating to the subject in Alabama. Our first statute on that subject was approved February 28, 1887; Sess. Acts, 74. Was there a common law duty resting on defendant at that time?

In *M. & E. Railway Co. v. Thompson*, 77 Ala. 448, we said it was "the duty" of railroads "to provide safe waiting rooms, and to keep the depot and platform well lighted in the night time. The injury we were considering in that case occurred at the Union Depot in this city, Montgomery, the common passenger depot of five railroads, with trains arriving and departing at different times; and the plaintiff in that suit had just alighted from the train on which he arrived. In support of our views we referred to the following authorities, which bear on the question of lighting the depot and its platform. Thompson on Negligence, vol. 1, p. 315, has this language: "It is the duty of the railway company to have its station houses open and lighted, and its servants present, for the convenience of those who may wish to leave its trains, or to depart by the same." In support of this doctrine the author refers to *Patten v. C. & N. W. Railway Co.*, 32 Wis. 524. In that case the injury suffered was at a country depot, and the plaintiff, an elderly lady and unattended, was discharged from the train at 9:45 at night. The trial judge submitted it to the jury to determine whether the railroad was guilty of negligence in not having its depot lighted, or a person there to give information. The Supreme Court held there was no error in this. It will be observed that in the Wisconsin case, there was at the depot neither a light, nor a person to give information.

The case of *Knight v. P. S. & P. R. R. Co.*, 56 Me. 234, also referred to by Thompson, arose as follows: Plaintiff was travelling under a ticket, which secured her passage over two connecting railroads, and a connecting steamboat line. From the terminus of the railroad, where plaintiff had to leave the cars, to the steamboat, was a "considerable dis-

tance," which she had to walk. It was across a wharf, the property of defendant, provided and used for the purpose. Plaintiff, it being at night and dark, stepped into a hole in the planking, and was injured. The court said: "The wharf should be lighted. The servants of the defendant corporation should be in readiness to point out the way. The wharf should be safe."

Another case referred to in *M. & E. Railway Co. v. Thompson*, is *Stewart v. I. & G. N. R. R. Co.*, 2 Amer. & Eng. R. R. Cases, 497; s. c., 53 Tex. 289. The gravamen of the petition [plaintiff's complaint] was, the negligent failure of the railroad company to provide "proper lights and accommodations for passengers at its depot." *Held*, that, on general demurrer, the petition was sufficient.—See, also, *Peniston v. C. St. L. & N. O. R. R. Co.*, 34 La. An. 777; *Reynolds v. Tex. Pacific Railway Co.*, 37 La. An. 694.

The other cases cited do not refer to the question of lights.

The case of *People v. N. Y., Lake Erie & W. R. R. Co.*, 104 N. Y. 58, is relied on as showing there is no common-law duty resting on the railroad, in the matter we have in hand. That was an application for the extraordinary writ of mandamus, to compel the railroad company to erect larger and more comfortable depot accommodations at Hamburg, one of its stopping places. The relief was denied, the court holding that there was neither statutory nor common-law obligations resting on railroads to erect depot buildings. So, in this case, if the defendant railroad company had neglected or refused to erect any depot building, any waiting room, or any platform at Boligee, we are not prepared to say there was any law under which it could have been compelled to do so.

The foregoing is not this case. The defendant did not neglect or refuse to erect a ticket-office, used as a waiting room, with platform in front, and steps leading to it. All these were erected, and persons wishing to be carried on the railroad, or having other business with it, had a standing invitation to enter the office, and transact business thereat. Those desiring tickets, must obtain them there and not elsewhere. And this invited right of entry, can not, at least without special warning, be restricted to the simple privilege of entering and remaining long enough to procure a ticket. It would include the right authorized custom, of using the office as a waiting room, if none other was provided. Hence,

although there may have been no law requiring the railroad to erect an office and platform at Boligee, yet, having done so, and having thereby invited persons having business with it to enter for its transaction, the law required that they should be adapted to the purpose, and not dangerous, hazardous, or unsafe. This, under the enduring principles of the common law, which govern new exigencies that have arisen or may arise, equally with conditions that gave them form and expression centuries ago.—*In re Railway Co. v. Railway Co.*, 87 Eng. Com. Law, 410.

The expression in *Thompson's case, supra*, was used in reference to the case we were then considering. Thompson had just arrived and left the train at a common depot of five railroads, and in a city. The train having just arrived, and passengers in the act of leaving it, and this in the night time, it is manifest that a light should have been furnished. And if the place was not otherwise sufficiently lighted, a light should have been provided at the place of debarkation. But this duty would have a limit. It would be incumbent only at the departure and arrival of trains, and for a sufficient time before departure, to enable persons desiring to take passage to be in readiness and enter the cars, without undue haste; and after the arrival, to enable those leaving the train to do so in safety. Beyond this, the duty of the railroad to maintain a light at its depot would in no case extend.—1 Thomp. Neg., 314; *Batlon v. S. & N. R. R. Co.*, 77 Ala. 591.

In the case we have in hand, the complaint does not disclose the size of the place, Boligee, nor does it show for how many railroads it is a depot. It informs us of but the one. It is a rule of law, as it is a lesson of common experience, that precautionary requirements increase in the ratio that danger becomes more threatening. It is certainly true that less vigilance is demanded at a small country depot of a single road, visited but few times in the twenty-four hours, than is required in cities where many trains arrive and depart during each day and night.

In each of the counts of the complaint it is averred that "the plaintiff attempted to descend the steps, when the train was about arriving." About, in the connection here used, means *nearly—not far from*. That is, *near—not far from*, the arrival of the train. Now, as these words are indefinite, and do not imply that the time had come when it was reasonably, or apparently necessary that plaintiff should descend from the platform to place himself in readiness to enter the

car, without undue haste, it is doubtful, if the question were properly and singly raised, if it sufficiently avers the time had arrived when it had become the duty of the railroad to have a light. The demurrer, however, does not point to this phase of the question, nor does it raise it singly. It takes the broad position that it was not the duty of the railroad to furnish "good and safe platform and lights or either of them." We have shown above that if the road did furnish a platform, it must be good and safe; and that in certain conditions it was its duty to furnish a light. The demurrer does not sufficiently point out or specify any defect in the complaint, and it was rightly overruled.

The question of expemplary damages is raised in this case in two forms. It is first objected that such damages can not be recovered, unless specially claimed in the complaint. That is certainly the rule when special damages are awarded. And if the question were an open one, there is much in the argument that exemplary damages, to be recoverable, should be specially claimed. Simple negligence, with damage, authorizes compensatory damages; while to maintain a claim for exemplary, or punitive damages, the negligence must be wilful, wanton, or reckless. We have, however, settled the question otherwise, and we will follow our rulings.—*Wilkinson v. Searcy*, 76 Ala. 176; 2 Thompson Neg. 1245; *Leach v. Bush*, 57 Ala. 145; *Panton v. Holland*, 17 Johns. 92; *L. & N. R. R. Co. v. Jones*, 83 Ala. 376; *Taylor v. Holman*, 45 Mo. 371. In Texas the rule seems to be different.—*Railway Co. v. Baker*, 57 Tex 419; *R. R, Co. v. Gierse.* 51 *Id*, 189.

The following authorities declare the rule as to special damages.—*Donnell. v. Jones.* 13 Ala. 490; *Hooper v. Armstrong*, 69 Ala. 343; *Pollock v. Gantt, Ib.* 373; *Squier v. Gould*, 14 Wend. 159; *Baldwin v. Western R. R. Co.*, 4 Gray 333; *Hart v. Evans*, 8 Penn. St. 13; *Good v. Mylin, Ib.* 51; *Lindley v. Dempsey*, 45 Ind. 246; *Chicago v. O'Brennan.* 65 Ill. 160; *Johnson v. Gorham*, 38 Conn. 513; *Adams v. Gardner* 78 Ill. 568; *Wood v. Rice*, 24 Mich. 423.

The other phase of the question is presented on the evidence. It is contended for appellant that taking the extremest view the testimony admits of, the conduct of the railroad company does not rise above simple negligence, as contradistinguished from gross negligence, which must be either wilful, wanton, or reckless. Taking into the account the fact that the negligence complained of was the failure to

[Alabama Great Southern R. R. Co. v. Arnold.]

furnish a light, there is no evidence in this record tending to prove either wilful, wanton, or reckless negligence on the part of the railroad.—*Wilkinson v. Searcy,* 76 Ala. 176; *Barbour County v. Horn,* 48 Ala. 576; *S. & N. Ala. R. R. Co. v. McLendon,* 63 Ala. 266; *Lienkauff v. Morris,* 66 Ala. 406; 1 Suth. Dam. 730; *Hamilton v. Third Av. R. R. Co.,* 53 N. Y. 25; *Biles v. Holmes,* 11 Ire. Law 16; *Avera v. Sexton,* 13 Id. 247; *Seymour v. C. B. & Q. Railway Co.,* 3 Biss. 43. The circuit court erred in refusing to give charges 3 and 4.

When this case returned to the circuit court, the defendant interposed new pleas, and among them plea No. 6. That plea truly sets forth the size of the village of Boligee, the nature of the business done there, that it is what is commonly called a country station, is without a municipal government, and has neither gas, electric, nor other out door lights. It then avers that the station house and its attatchments were amply sufficient and well appointed for the place, its travel and business, and were constructed with as much care as is required and observed, at similar places by well regulated railroads; that they had in door lights at the station house, and that it was not customary on well regulated railroads to maintain out door lights at such country stations. It further avers that their lights were portable, and subject to the call of the travelling public, and that " said plaintiff and the public generally were well acquainted with said station house and the approaches thereto, and the habits and customs connected therewith for the regulation and use of said station, and for the use of the lights about the same; and defendant avers this being its full duty in the premises, it provided such lights as were required by [of?] it at said station, and neither did the plaintiff nor any one for him, demand any further or additional lights, nor ask to be lighted to or from the stopping place of said train on said night." The plea is very full, and covers the whole ground it relies on as a defense to the action. That ground is,. that it had conformed strictly to the usage and custom of well regulated railroads at similar country stations, in the construction of its station house and the approaches to it, and in providing lights; and that the lights provided were sufficient, and at the service of plaintiff, if he had called for them. On this plea, as we understand the record, the plaintiff took issue. At all events, the record shows no demurrer to it. There was a demurrer to the complaint, and to plea No. 3, and these were ruled on. The record shows that issue was

[Alabama Great Southern R. R. Co. v. Arnold.]

joined on the five pleas, and this was the number left after the court, at a former term, had sustained the demurrer to plea No. 3.

If the testimony proved the truth of the material averments of fact contained in plea No. 6, under a well settled rule of law, that would have entitled the defendant to a verdict, whether the plea was sufficient or not.—*Irion v. Lewis*, 56 Ala. 190; *Mudge v. Treat*, 57 Ala. 1; *Jones v. Collins*, 80 Ala. 108.

Is the plea insufficient, if it had been demurred to? Railroad companies and other corporations are persons—artificial persons, it is true—but yet clothed with all the rights, as well as bound by all the obligations, which protect and govern natural persons. Their liabilities are the same, no greater, no less, than those which rest on natural persons in like conditions. A hotel keeper, merchant, shop keeper or any other person engaged in business which invites patronage and personal calls, is under an obligation corresponding to that of a railroad company, to provide for the safety of its visiting customers. If doing business, keeping open doors, and inviting and receiving customers in the night time intensifies the diligence of the one, it equally intensifies the diligence of the other, the surroundings being similar. If there is a difference, it is only such difference as the number and frequency of invited calls may make; not a difference in kind, but in degree.

If railroad corporations, in the administration of their affairs, conform to the rules adopted, or in general use, by prudently conducted railroads, they are free from blame, unless they violate or disregard some positive requirement of the law, and thereby inflict an injury.—*L. & N. R. R. Co. v. Allen*, 78 Ala. 494; *Ga. Pac. R. R. Co. v. Propst*, 83 Ala. 518.

In the case of *Burke v. Witherbee*, 98 N. Y. 562, the plaintiff's intestate had been killed, while working in a mine. A hook had become detached, and a car descended from above, causing the homicide. It was shown that in other mines as well as this, this appliance was used, and that for over a year it had been in use in this mine night and day, without an accident. It was held that this was a full defense to the action. The court, Earle, J., in commenting on the facts of the case, said: "It seems to us quite inadmissible, if not preposterous, to attribute negligence to a mine owner for using an implement which had been employed in different

[Alabama Great Southern R. R. Co. v. Arnold.]

mines, and which under varying conditions, upon countless occasions, uniformly answered its purpose, without injury to any one." In *Laflin v. B. & S. W. R. R. Co.*, 106 N. Y. 136, in was said to be a general rule that "where an appliance, machine or structure, not obviously dangerous, has been in daily use for years, and has uniformly proved adequate, safe and convenient, it may be continued without the imputation of negligence." That case is a strong authority bearing on the merits of the present suit. See also *Loftus v. Union Ferry Co.*, 84 N. Y. 455.

What we have said above is, at last but the corollary of the generally accepted definition of negligence—"the want of such care as men of ordinary prudence would use under similar circumstances."—Shear. & Redf. on Neg. 12. See, also, *Cornman v. E. C. Railway Co.*, 4 Hurlst & Nor. 781. It would be monstrous to hold that, notwithstanding the railroad company did precisely and fully what men of ordinary prudence were in the regular habit of doing under similar circumstances, yet this defendant is liable for the injury the plaintiff suffered therefrom.

We can not affirm that the Circuit Court erred in refusing to give charges one and two, for the record does not show that in the construction and maintenance of the ticket office, platform, its approaches and lights, the defendant railroad company conformed to what was customary at similar stations with well regulated railroads.

Pleas Nos. 2 and 4 raise the defense of contributory negligence. There was testimony, not disputed, that the platform was only three and a half feet wide, that the steps were of equal width with the door, and immediately in front of it, and that plaintiff was familiar with the place. Going straight out from the door, the plaintiff could not have missed the steps, would not have fallen, would not have been injured. He testified himself that as he was crossing the platform, he was cautioned to "look out for the steps." There is testimony that he crossed the platform obliquely to the right. But this needed no proof. The fact that he missed the steps and fell to the right of them, is proof conclusive that he did deflect to the right. Was this not proximate, contributory negligence? Was he not the author of his own injury?—*O'Brien v. Tatum*, 84 Ala. *infra; Tanner v. L. & N. Railroad Co.*, 60 Ala. 621; *Woodward Iron Co. v. Jones*, 80 Ala. 123; *Lilly v. Fletcher*, 81 Ala. 234; *Toomey v. L. B. & So. Coast R'wy Co.*, 3 J. Scott, N. S. (s. c. 91 Eng. Com. Law), 146;

[Alabama Great Southern R. R. Co. v. Mt. Vernon Co.]

*Siner v. Gr. Western R'y Co.*, L. R. 3 Exchequer, 150; 1 Add. on Torts, § 34; *Wilds v. H. R. Railroad Co.*, 24 N. Y. 430; *Hulbert v. N. Y. Cen.*, 40 N. Y. 146; *Van Schaick v. H. Riv. Railroad Co.*, 43 N. Y. 527; *City of Indianapolis v. Cook*, 99 Ind. 10; *Seymour v. C. B. & Q. Railway Co.*, 3 Biss. 43.

My own opinion is that the plaintiff was guilty of proximate, contributory negligence, and that on the testimony as deposed to by his witnesses the general charge ought to have been given in favor of the defendant. My brothers, however, think this was a question for the jury.

Reversed and remanded.